## In re SCHEFFLER.

### No. ——.

District Court, D. New Jersey.

Dec. 17, 1937.

William Gottlieb, of Hoboken, N. J., (Samuel Tartalsky, of Jersey City, N. J., of counsel), for bankrupt-petitioner.

Edward Stover, of Hoboken, N. J., for opposing creditors.

FORMAN, District Judge.

The petitioner, Arthur Scheffler, filed a voluntary petition in bankruptcy on June 6, 1934, and on March 4, 1935, he was discharged in bankruptcy. The facts disclosed by the affidavits are that in September, 1928, the petitioner purchased the property commonly known as 227–229–231 Hudson street, Hoboken, N. J., from the widow and heirs at law of John Henry Timken, namely, Rose Marie Timken, John Henry Timken, Herman Louis Timken, Rose Marie Willenborg, and Florence Bertha Bird. The property was formerly owned by John Henry Timken, who died intestate and from whom the grantors inherited the land. The petitioner executed a bond and purchase-money mortgage to the grantors. The premises were subject to a prior lien held by the Hoboken Bank for Savings. In his schedule the bankrupt listed the estate of John Henry Timken as creditor instead of the heirs of said Timken, the actual creditors of the bankrupt. Following his discharge in bankruptcy and on March 29, 1936, the heirs of John Henry Timken commenced a proceeding in the state court of New Jersey for the balance due on the purchase price. The defendant, Arthur Scheffler, interposed the defense that he had been discharged in bankruptcy and that the plaintiffs had received notice of his petition in bankruptcy. Notwithstanding this fact, the trial in the state court ultimately resulted in a verdict and judgment for the plaintiffs. On August 9, 1937, the bankrupt-petitioner made a motion in this court to amend his schedule so as to include the heirs of John Henry Timken, and thereby be discharged of his obligation to them, he claiming that the estate of John Henry Timken was mistakenly listed.

In opposition to the petition the creditors urge upon the court the application of In re Feldesman, D.C., 13 F.Supp. 1010. Therein the bankrupt moved for an order permitting her to file amended schedules so as to list the Morris Plan Company as a creditor. No such claim was included in

the · original schedules, and the omitted creditor filed no claim. The motion was made some 20 months after adjudication. Meanwhile, the bankrupt had obtained her discharge. The court stated:

"To extend to the bankrupt the relief asked for would work a manifest injustice. on the creditor. The six months within which proof of claim may be filed expired over a year ago. It is settled law that after the termination of the period for filing claims the bankrupt will not be allowed to bring in omitted creditors. In re Hawk, 114 F. 916 (C.C.A.8); In re Spicer, 145 F. 431 (D.C.N.Y.); In re Atlas, 49 F.2d 474 (D.C.N.Y.); In re Trosky, 55 F.2d 995 (D.C.N.Y.).

"The bankrupt claims that the omitted creditor had notice of the bankruptcy. It may be noted that two of the three incidents alleged to constitute notice occurred after the six months' period and thus are ineffective on their face. Birkett v. Columbia Bank, 195 U.S. 345, 25 S.Ct. 38, 49 L.Ed. 231. As to the third, the bankrupt's showing is feeble and the creditor's refutation much more convincing. But the matter of notice is of no moment on an application of this kind. If the creditor had notice of the debtor's bankruptcy in time to file its claim, that fact may be presented by the debtor as a bar to proceedings in the state court. to collect on the claim. The fact of notice, if it be a fact, is assuredly no reason for allowing an amendment of the schedules at this late date." o

■ The only practical difference between this case and the case at bar is that in the latter there was an abortive attempt by the bankrupt to list the creditors involved, when he described them in his schedule, as "The Estate of John Henry Timken." The .only bearing this point could have would be on the question of notice. This very issue was before the jury in the proceeding before the state court and was decided against the petitioner. It is to be observed that in Re Feldesman, supra, the court indicated that notice was of no moment in an application to ·amend the schedule, but would become material only as a defense to a prosecution of the claim. In the case at bar the defense of notice has already been unsuccessfully interposed at the trial before the state tribunal.

■ In the instant case 29 months elapsed from the date· of the petitioner's· last discharge in bankruptcy. None of the cases cited by the petitioner in which a motion to amend the schedule was allowed involved. a lapse of time as great as that.

The petitioner urges upon the court the application of In re Adams, D.C., 242 F. 335, 336, ·wherein the bankrupt was indebted to Charles H. Cone on a series of notes and under some misapprehension scheduled Cone Realty Company as the creditor. Cone sued on the notes and the bankrupt made his motion to amend his schedule so as to include Cone instead of Cone Realty Company. The motion of the bankrupt was granted.' No statement is to be found in the opinion indicating that such a motion should be made within a definite period of time, and no facts recited reveal that the motion was seasonably made. However, it may not be presumed that' the court considered this fact immaterial. The court stated:· "I am inclined to follow the decision of Judge Chatfield, of the District Court of the. Eastern District of New York (In re McKee et al., 165 F. 269), which was a case very similar to this and upholds the granting of an application in a case such as this for setting aside the discharge and reopening the case."

In the case before Judge Chatfield it is clear that the motion to amend was seasonably made, and that the court would not have granted the motion under different circumstances, because Judge Chatfield specifically differentiated his case from In re Spicer, D.C., 145 F. 431, wherein the application was made "after the expiration of 12 months subsequent to adjudication."

The petitioner contends that the case of In re Ingrao, D.C., 40 F.2d 946 is directly in point. There the bankrupt filed a voluntary petition on July 2, 1928. Discharge was granted on February 11, 1929. Thereafter, on July 30, 1929, judgment creditors owning deficiency judgments issued garnishee execution against the wages of the bankrupt. The bankrupt made application to vacate the discharge for the purpose of amending the petition by including in the schedules the judgments entered against the bankrupt prior to the filing of the original petition and which were omitted from the schedule. It appears that this application was made within a year from the date of discharge in bankruptcy. The court did not discuss whether or not the motion was made timely, but resorted to its general equity pow-

ers in aid of the petitioner. The court made this limitation upon its resort to general equity powers: "The bankrupt is entitled to the benefits of the Bankruptcy Act [11 U.S.C.A. § 1 et seq.] in the absence of fraud or *intentional laches*." 40 F.2d 946, 948. (Italics supplied.)

In that case it is clear that there was no intentional laches on the part of the petitioner because the existence of a deficiency judgment was not discovered until garnishee proceedings. In the instant case the petitioner has known of his mistake at least from the time he was sued by the plaintiffs in the state court of New Jersey on March 29, 1936. He waited, however, to make this motion until August 9, 1937. This, then, would put him beyond the limitations expressed in Re Ingrao, supra.

In Re Magwood, D. C., 13 F.Supp. 661, 662, the bankrupt was indebted on a promissory note payable to Alice Silverberg and Celia Silverberg. The payees were sisters and lived together at the same address. In his schedule the bankrupt listed only Celia Silverberg as creditor. She appeared before the referee in bankruptcy and filed her claim through her attorney. Alice Silverberg sued on the note and recovered judgment by default. She was represented by the same attorney who represented her sister before the referee in bankruptcy. The bankrupt then moved to amend his schedule in order to include Alice Silverberg, and his motion was granted. The relief afforded the bankrupt in that case can have no effect upon the disposition of the instant case as the two cases may be easily differentiated. In Re Magwood, supra, the court stated: "It would be impossible for any one to believe that Alice Silverberg did not know of the bankruptcy proceedings, notwithstanding that no notices were sent to her, under the circumstances above mentioned and in view of the fact that she was represented in the action to collect on the very claim by the same attorney in the Supreme Court action as the one who appeared in the bankruptcy proceeding and filed the claim."

In the case at bar the issue of notice was decided in the proceeding before the state tribunal and resolved against the defendant.

Some attempt has been made herein to distinguish the cases argued by the petitioner from the one at bar. However, there is little uniformity in the decisions. It is, as said by Judge Patterson in the case of In re Carobine, D.C., 8 F.Supp. 605: "So far as the provisions of the Bankruptcy Act go, the court is empowered to disturb a discharge on one ground only, and that is the power to revoke it for fraud in the procurement of it. Bankr. Act § 15, 11 U.S.C.A. § 33. Here no fraud is charged. It has been held or intimated in a number of cases that, in addition to the express power given by the act to revoke discharges for fraud, the court has an inherent power to vacate and set aside discharges in the general interests of justice, for mistake, excusable neglect, or other equitable grounds. In re Louisville National Banking Co., 158 F. 403 (C.C.A.6); In re Applegate, 235 F. 271 (D.C.N.Y.); In re Goldenberg & Halbert, 286 F. 292 (D.C.Pa.); Rash v. Metzger, 31 F.2d 424 (C.C.A.3); In re Martin, 38 F.2d 629 (C.C.A.); In re Ingrao, 40 F.2d 946 (D.C.N.Y.). See, also, In re Bimberg, 121 F. 942 (D.C.N.Y.); In re Cuthbertson, 202 F. 266 (D.C.S.D.); Remington on Bankruptcy, § 3615. On the other side, there is an able opinion by Judge Amidon, in which the existence of any such inherent power is denied. In re Aasand, 7 F.2d 135 (D.C.N.D.). And the Circuit Court of Appeals of this circuit has held that in the analogous case of composition there is no general or inherent power to set aside orders of confirmation; the only power to vacate compositions being that derived from section 13 of the act [11 U.S. C.A. § 31]. In re Isidor Klein, Inc., 22 F.2d 906 (C.C.A.2). The extent of the power over discharges, however, was expressly left open in the Klein Case. The authorities are thus in an unsatisfactory condition, at least in this district."

While it is reasonable and settled law that the Bankruptcy Act should be construed liberally in favor of the bankrupt, I am not persuaded that exemption from plain statutory requirements, concerning timeliness of action and notice, may be granted lightly, if the bankruptcy law is to effectively serve its dual purpose of protecting both debtor and creditors. It seems that the bankrupt here had his full opportunity to achieve all of the privileges provided for him under the act. If he is placed in a position now to his disadvantage, it is due only to his own omission and not to any active motion of his creditors. They must not be penalized to his advantage now. Hence, his petition must be dismissed.